IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, et al.,

               Plaintiffs,

      - v -                              No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

               Defendants.
_____


## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS


                             ERIC T. SCHNEIDERMAN
                             Attorney General of the
                             State of New York
                             Attorney for Plaintiffs

             BY:       S/ Timothy Hoffman_____
                             TIMOTHY HOFFMAN
                             Assistant Attorney General
                             of Counsel
                             350 Main Street, Suite 300A
                             Buffalo, New York 14202
                             (716) 853-8400
                             Timothy.Hoffman@ag.ny.gov

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.....................................................................................1

BACKGROUND.......................................................................................................2
    The Nuclear Waste Policy Act...........................................................................2
    The West Valley Site...........................................................................................4
    Federal-State Negotiations Regarding the Costs of Permanent Disposal....................5
    This Lawsuit.......................................................................................................7

ARGUMENT...........................................................................................................8

I.  THE STATE'S DECLARATORY JUDGMENT CLAIM SHOULD BE
    DISMISSED BECAUSE THE CLAIM IS NOT RIPE FOR ADJUDICATION.................9

    A.  The State's Claim Is Not Fit for Adjudication............................................10
    B.  There Is No Hardship to the Parties From Withholding Judicial Consideration
        of the State's Claim.....................................................................................13

II.  THERE IS NO FINAL AGENCY ACTION REGARDING RESPONSIBILITY FOR
    THE COSTS OF PERMANENT DISPOSAL ...................................................14

    A.  There Has Been No Consummation of the Department of Energy's Decision
        Making Process Concerning Responsibility for the Costs of Permanent
        Disposal......................................................................................................15
    B.  The Department of Energy Has Taken No Action That Determines Legal Rights
        and Obligations or From Which Legal Consequences Will Flow.......................16

CONCLUSION.......................................................................................................18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, et al.,

                Plaintiffs,

       - v -                                No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                Defendants.
_____

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiffs the State of New York, et al. (collectively, the "State") move this Court for an order dismissing the State's protectively filed declaratory judgment claim concerning permanent disposal costs for high-level radioactive waste currently stored in West Valley, New York.  The State sought a declaration that defendants United States, et al. (collectively, the "United States") are responsible for those costs under the Nuclear Waste Policy Act because the West Valley waste is "from atomic energy defense activities," 42 U.S.C. § 10107(b)(2).  The State's declaratory judgment claim should, however, be dismissed because a permanent federal repository for high-level radioactive waste is at best decades away.  Consequently, the State's claim is not ripe for adjudication.  Nor has there been any final agency action by the federal government on disposal cost responsibility that is subject to judicial review.

The State brought this lawsuit -- which also sought to recover the State's response costs and determine other clean-up responsibilities at West Valley -- in 2006.  At that time it appeared that a permanent federal repository for the disposal of high-level radioactive waste might be

available reasonably soon.  As a result, the State included a claim to determine responsibility for the costs of permanent disposal even though the United States had made no definitive decision regarding responsibility for disposal costs, or taken any action that determined legal rights or had legal consequences.

The State has resolved the other cost responsibility issues raised in this lawsuit, and it is now clear there will be no permanent disposal repository for at least several decades.  Because permanent disposal of the high-level radioactive waste at West Valley is delayed for an indefinite period of time, the question of responsibility for the waste's disposal costs is hypothetical and premature.  Under these circumstances the State's declaratory judgment claim should be dismissed without prejudice.

## BACKGROUND

The Nuclear Waste Policy Act

In 1982, Congress passed the Nuclear Waste Policy Act ("Nuclear Waste Act" or "Act"), 42 U.S.C. §§ 10101-10270, to address the "national problem" created by the accumulation of spent nuclear fuel and radioactive wastes, 42 U.S.C. § 10131(a)(2).  The statute imposed two primary requirements.

First, the Act requires the federal government "to provide for the permanent disposal" of high-level radioactive waste, id. § 10131(a)(4), and mandates that it do so by constructing a deep underground repository within a rock formation where wastes would be isolated from human contact, id. §§ 10101(18), 10131(b); see Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy, 680 F.3d 819, 821 (D.C. Cir. 2012).

Second, the Act provides that "the costs of such disposal should be the responsibility of the generators and owners of such waste" except that "[t]he costs resulting from permanent disposal of high-level radioactive waste from atomic energy defense activities shall be paid by the Federal Government."  42 U.S.C. §§ 10107(b)(2), 10131(a)(5).  Thus, as the United States Court of Appeals for the District of Columbia Circuit recently explained, the Act "made the generators of nuclear waste responsible for the full costs of the disposal of *civilian* nuclear waste."  Nat'l Ass'n of Regulatory Util. Comm'rs, 680 F.3d at 821 (emphasis in original).  With respect to civilian nuclear waste, the Act requires the federal Department of Energy "to establish a Nuclear Waste Fund, composed of payments made by the generators and owners of such waste and spent fuel" and to collect those payments on an ongoing basis.  42 U.S.C. §§ 10131(b)(5), 10222.

In 1987, Congress amended the Nuclear Waste Act to direct the Department of Energy to consider the suitability of only one site -- Yucca Mountain, Nevada -- for the repository.  42 U.S.C. §§ 10133, 10172.  Although the Act required the Department to begin permanent disposal of high-level radioactive waste by 1998, in 1995 the Department announced that disposal could not begin until 2010.  Then in 2009 the Department stated that construction at Yucca Mountain would not begin until at least 2011, and that waste transportation and disposal would not occur until 2020.  Then, later in 2009, the federal government announced that Yucca Mountain was no longer a workable option for a repository, and established a "Blue Ribbon Commission on America's Nuclear Future" to reconsider all alternatives for permanent disposal of nuclear waste.  The Commission estimated in 2011 that the process for selecting and evaluating a permanent disposal site -- even before construction began -- would take another fifteen to twenty years.

March 18, 2013 Declaration of New York State Energy Research and Development Authority

General Counsel Hal Brodie ("Brodie Decl.") ¶¶ 15-16.

In January 2013, the Department of Energy responded to the Blue Ribbon Commission's

reports by issuing a <u>Strategy for the Management and Disposal of Used Nuclear Fuel and High-

Level Radioactive Waste</u> ("Federal Disposal Strategy").[1]  The Federal Disposal Strategy states

that "[w]ith the appropriate authorizations from Congress . . . [t]he Administration's goal is to

have a [geologic] repository sited by 2026; the site characterized and the repository designed and

licensed by 2042; and the repository constructed and its operations started by 2048."  Federal

Disposal Strategy at 2, 7; Brodie Decl. ¶ 17.

<u>The West Valley Site</u>

In order to encourage the development of commercial nuclear power reactors, the federal

Atomic Energy Commission (now the Nuclear Regulatory Commission) helped create the

Western New York Nuclear Service Center ("West Valley"), the only commercial nuclear fuel

reprocessing facility ever to operate in the United States.  In the beginning, the federal

government supplied West Valley with a baseload of spent nuclear fuel from a federal defense

program nuclear reactor at the Commission's Hanford, Washington Reservation.  Spent nuclear

fuel was reprocessed at West Valley from 1966 until 1972, by which time West Valley contained

600,000 gallons of liquid high-level radioactive waste as well as facilities that had been highly

contaminated during the reprocessing operations.  Most of this high-level waste resulted from

reprocessing the Hanford spent nuclear fuel.  The New York State Energy Research and

---

[1] The Federal Disposal  Strategy is available at http://energy.gov/downloads/strategy-management-and-disposal-used-nuclear-fuel-and-high-level-radioactive-waste.

Development Authority ("State Energy Authority") subsequently took title to West Valley after the commercial reprocessing company surrendered site responsibility.  Brodie Decl.¶¶ 5-8.

In 1980, Congress passed the West Valley Demonstration Project Act, Pub. L. 96-368 ("West Valley Act").[2]  This legislation directed the federal Department of Energy to carry out a high-level radioactive waste management demonstration project at West Valley.  The project included solidifying the liquid high-level radioactive waste at West Valley, which is now contained in 275 canisters that are stored at the site .  To date over $2.5 billion has been spent by the federal and New York State governments on site cleanup.  Brodie Decl. ¶¶ 9-10, 12.

Federal-State Negotiations Regarding the Costs of Permanent Disposal

Beginning in 1983, the federal Department of Energy and the State Energy Authority discussed the issue of responsibility for the costs of permanently disposing of high-level radioactive waste located at West Valley, along with responsibility for site cleanup and ongoing maintenance and waste storage at the site.[3]  In 1983 the Department of Energy took the position that a perpetual care fund held by the State Energy Authority would be sufficient to cover the costs of permanent disposal.  Then in 1986 the Department stated that New York was required to enter into a contract with the Department and pay a fee for the disposal of West Valley high-level radioactive waste.  The State Energy Authority disagreed with the Department's position because the Nuclear Waste Act and its implementing regulations require such contracts only for waste generated by civilian nuclear power reactors.  See 42 U.S.C. § 10222; 10 C.F.R. § 961.11.

---

[2] The West Valley Act is set forth in the note to 42 U.S.C. § 2021a.
[3]  The State proffers this information regarding its negotiations with federal Department of Energy for the purpose of supporting its demonstration that the claim is not presently justiciable. See Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1161 (9th Cir. 2007) (Fed. R. Evid. 408 does not preclude evidence regarding "the jurisdictional requirements of an action for declaratory relief").

The State Energy Authority explained that, because the high-level radioactive waste at West Valley is "from atomic energy defense activities," see 42 U.S.C. § 10107(b)(2), the federal government is responsible for disposal costs under the Act.  Brodie Decl. ¶ 19.

From 1999 to 2001, the State Energy Authority and federal Department of Energy conducted extensive negotiations regarding site maintenance, cleanup, and disposal of the nuclear waste, and tentatively resolved a number of issues, including responsibility for disposal costs.  However, in 2001 the Department of Energy unilaterally terminated negotiations and issued a press release to that effect.  Later that year the State Energy Authority explained again in a letter to the Department that the high-level radioactive waste at West Valley is from "atomic energy defense activities" as defined in the Nuclear Waste Act, for which the federal government bears disposal cost responsibility.  Brodie Decl. ¶¶ 20-21.

In February 2002, Department of Energy Undersecretary Robert Card wrote a letter to the State Energy Authority stating that New York was responsible for the costs of West Valley high-level radioactive waste disposal.  The State Energy Authority responded later that month, reiterating that those costs are the federal government's responsibility under the Nuclear Waste Act.  Undersecretary Card wrote back to the Authority in April 2002, stating that "we can continue to make significant progress at the [West Valley site] while we discuss long-term issues."  The letter also "propos[ed] non-binding mediation be considered as a possible way to expedite resolution of longer-term cleanup, decommissioning, and monitoring issues," and enclosed a "Path Forward" document for continuing to discuss those issues.  Brodie Decl. ¶¶ 22-24.

In May 2002, the State Energy Authority responded to the Department of Energy's April 2002 letter, welcoming the Department's decision to resume negotiations.  The Authority agreed

to "discuss and consider non-binding mediation to help expedite resolution" of issues relating to disposal costs.  In September 2002, the Department sent to the Authority the Department's edits to a draft agreement which provided that the parties would retain the services of a mediator to "enter into non-binding mediation to assist in resolving outstanding issues," including "[r]esponsibility for payment of the fee for disposal of the solidified high level radioactive waste."  However, that mediation never took place.  Brodie Decl. ¶¶ 25-26.

This Lawsuit

In 2006, the State sued the United States, asserting four causes of action.  The first two causes of action sought costs and natural resource damages for the release of hazardous substances at West Valley under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").  Complaint ¶¶ 121-130.  The third cause of action sought a declaratory judgment that the United States is responsible for maintaining, decontaminating, and decommissioning the West Valley site under the West Valley Act.  Complaint, ¶¶131-135.  And, because it appeared that a permanent repository for high-level radioactive waste might be available as early as 2010, the fourth cause of action sought a declaratory judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. § 703, that the United States is responsible under the Nuclear Waste Act for the costs of disposing of West Valley high-level radioactive waste in the permanent federal repository.  Complaint, ¶¶ 136-139.  The State brought that claim as a protective measure because although the Department of Energy had indicated in April and September 2002 that it was willing to mediate the issue, the Department had also asserted in February 2002 that New York was responsible for the costs of permanent disposal.  Brodie Decl. ¶ 27.

In 2010, this Court approved a consent decree that settled certain issues regarding the respective financial responsibilities of the federal government and New York for clean-up at West Valley.  The parties have also agreed that the State will dismiss its CERCLA natural resource damages claim without prejudice.  Brodie Decl. ¶¶ 29-30.

The only claim that remains unresolved is the State's claim requesting a declaration that the United States is responsible for the cost of disposing of the West Valley high-level radioactive waste in a permanent repository.  Since the State's complaint was filed in 2006, however, it has become apparent that selection and evaluation of a permanent repository will take decades, with no actual construction, much less disposal, scheduled for many more years after that.  As a result, the high-level radioactive waste at West Valley will not be permanently disposed of in a federal repository for the indefinite future.  Brodie Decl. ¶¶ 18, 28, 31.


## **ARGUMENT**

The State's protective claim for a declaratory judgment that the United States is responsible for the costs of disposing of the high-level radioactive waste at West Valley in a permanent federal repository is properly before the Court only if it meets constitutional and prudential ripeness standards, and is reviewable under the APA.  The State's remaining claim in this action should be dismissed because the claim is not ripe for adjudication, and there has been no final agency action for purposes of judicial review under the APA.

**I.**

**THE STATE'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED
BECAUSE THE CLAIM IS NOT RIPE FOR ADJUDICATION**

The State's declaratory judgment claim is not justiciable because it is not ripe for adjudication.  "The issue whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution."  Bateman v. City of W. Bountiful, 89 F.3d 704, 706 (10th Cir. 1996).  Because ripeness presents a threshold question that courts may properly resolve before addressing other jurisdictional issues, Toca Producers v. FERC, 411 F.3d 262, 265 n* (D.C.Cir. 2005), a court may properly dismiss an unripe claim without reaching other threshold questions.  See, e.g., Connecticut v. Duncan, 612 F.3d 107, 112 (2d Cir. 2005), citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999).

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003), quoting Reno v. Catholic Soc. Servs., 509 U.S. 43, 58 (1993).  Reflecting the reluctance of courts to grant a declaratory judgment interpreting a statute before the statute has been enforced, this doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," and also to preclude "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way."  Id. at 807-08, quoting Abbott Labs v. Gardner, 387 U.S. 136, 148-49 (1967).  Even a final agency regulation interpreting a statute is generally not ripe for adjudication in the absence of "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him" or "a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately."  Id. at 808, quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990).

9

The underlying question in the State's declaratory judgment claim is whether the Nuclear Waste Act requires the United States or the State to bear responsibility for the costs of the planned eventual permanent disposal of the West Valley high-level radioactive waste.  The United States has stated in correspondence that the Act requires the State to pay the disposal costs because the State owns the high-level waste at Waste Valley.  The State has responded that under the Act the United States is responsible for the costs because the waste is the result of "defense nuclear waste and materials by-products management" and "defense research and development," 42 U.S.C. § 10101(3)(E), (G), and thus is "waste from atomic energy defense activities," id. § 10107(b)(2).  In light of this disagreement and the apparent likelihood -- when this litigation was commenced in 2006 -- that a permanent repository would be available soon, the State included in this lawsuit its protective claim for a declaratory judgment that the United States is responsible for the costs of permanent disposal in the federal repository.

Where, as here, a party seeks pre-enforcement judicial review of an administrative agency's construction of a statutory requirement, the ripeness inquiry requires a court to evaluate two elements:  "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration."  Abbott Labs, 387 U.S. at 149.  For the following reasons, neither of the Abbot Labs elements favors a finding of ripeness.

A.      **The State's Claim Is Not Fit for Adjudication.**

The fitness element of the ripeness test "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur."  N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008).  Courts consider "several factors, including whether the issue presented is a purely legal one, whether consideration of that issue would

benefit from a more concrete setting, and whether the agency's action is sufficiently final." Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 435 (D.C. Cir. 1986).  Based on these factors, the State's declaratory judgment request is not yet fit for adjudication.

Even when, as here, the issue involves statutory interpretation, it is not fit for judicial decision if "further factual development would 'significantly advance [the Court's] ability to deal with the legal issue[] presented.'"  Nat'l Park Hospitality Ass'n, 538 U.S. at 812, quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 82 (1978).  The State's claim would benefit from further development that will situate the dispute in a "more concrete setting," Ciba-Geigy Corp., 801 F.2d at 435, for three reasons.  First, in contrast to when this action was brought in 2006, it has become apparent that a site for permanent disposal of high-level radioactive waste will not be selected, far less constructed or made operational, for several more decades.  Indeed, the District of Columbia Circuit recently expressed "considerable skepticism as to whether a permanent facility can be built given the societal and political barriers to selecting a site." New York v. Nuclear Regulatory Comm'n, 681 F.3d 471, 478 (D.C. Cir. 2012).  Second, future congressional action to implement the current federal strategy is anticipated.  Such action, if and when it occurs, may have now unforeseeable effects on the federal-State dispute regarding the costs of permanent disposal.  Third, the West Valley high-level radioactive waste has already been the subject of two federal atomic or nuclear energy experiments -- the initial reprocessing of spent nuclear fuel from the federal defense program and other sources, and the subsequent solidifying and immobilizing of the resulting high-level radioactive waste through the West Valley Demonstration Project.  In the absence of a permanent federal repository for many years to come, the ultimate disposal of the West Valley waste is not clear.

This indefinite delay and uncertainty has rendered disposal costs an abstract issue, and "the court would benefit from deferring initial review until [the issue has] arisen in a more concrete and final form."  Connecticut v. Duncan, 612 F.3d at 112-13, quoting Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).  That is even more true where, as here, the dispute depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  Cacchillo v. Insmed, Inc., 638 F.3d 401, 405 (2d Cir. 2011), quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985).  If and when the disposal cost issue ever becomes concrete, different -- and unforeseeable -- considerations will likely be present due to future factual developments and legislative action.  In this case the ripeness doctrine counsels against court review in order "to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of . . . issues that time may make easier or less controversial."  Connecticut v. Duncan, 612 F.3d at 114 (internal citations omitted).

Additionally, to assess whether a federal administrative action is sufficiently final for purposes of ripeness, courts look to whether the action is final under the APA.  Abbott Labs, 387 U.S. at 149-50.  As explained in section II below, the federal Department of Energy's correspondence with the State is not final agency action under the APA, 5 U.S.C. § 704.  Indeed, the Department has not "view[ed] its deliberative process as sufficiently final to demand compliance with its announced position."  Ciba-Geigy Corp. v. EPA, 801 F.2d at 436.  Instead, the department indicated to the State before this lawsuit was filed that it was willing to enter into mediation regarding responsibility for the cost of permanent disposal.  Under these circumstances, judicial review at this time "squanders judicial resources since the challenging

party still enjoys an opportunity to convince the agency to change its mind." Id. (citations omitted).

**B.      There Is No Hardship to the Parties From Withholding Judicial Consideration of the State's Claim.**

The lack of hardship to the parties also demonstrates that the claim is not ripe for adjudication at this time.  Although the United States collects disposal fees from civilian nuclear power plants on an ongoing basis, it has taken no enforcement action to compel the State to pay those fees.  Because there will be no permanent repository for decades -- if ever -- there will be no undue burden to any party from delaying review of the high-level radioactive waste disposal cost responsibility question.

In National  Park Hospitality Ass'n, the Supreme Court explained that, in the context of ripeness, hardship flows from "adverse effects of a strictly legal kind," such as (1) "command[ing] anyone to do anything or to refrain from doing anything"; (2) "grant[ing], withhold[ing], or modify[ing] any formal legal license, power, or authority"; (3) "subject[ing] anyone to any civil or criminal liability"; or (4) "creat[ing] … legal rights or obligations."  Nat'l Park Hospitality Ass'n., 538 U.S. at 809, quoting Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).  In contrast, "mere uncertainty as to the validity of a legal rule" does not "constitute[] a hardship for purposes of the ripeness analysis."  Id. at 811.

Here, the United States has never demanded payment from the State, commanded the State to take any action relative to disposal costs, or otherwise purported to impose a legal obligation on the State.  Rather, it has advanced a negotiating position.  Therefore, while the present dispute may reflect uncertainty, it does not pose a legally cognizable hardship or otherwise affect the State's "primary conduct," id. at 810.  Because the dispute is currently no

more than an "abstract disagreement" that involves "mere uncertainty," id. at 807, 811, it is

unripe for adjudication.


## II.

## THERE IS NO FINAL AGENCY ACTION REGARDING RESPONSIBILITY FOR THE COSTS OF PERMANENT DISPOSAL

The State's claim is also not reviewable under the APA.  The APA provides a right to

judicial review of all "final agency action for which there is no other adequate remedy in a

court." 5 U.S.C. § 704.  Two requirements must be satisfied for agency action to be "final":

> First, the action must mark the consummation of the
> agency's decision making process -- it must not be of
> a merely tentative or interlocutory nature.  And second,
> the action must be one by which rights or obligations
> have been determined or from which legal consequences
> will flow.

Bennett v. Spear, 520 U.S. 154, 178-79 (1997) (internal citations and quotations omitted).

In this case neither prerequisite for final agency action has been met.  First, the

Department of Energy has made no definite decision about responsibility for the costs of

permanently disposing of the West Valley high-level radioactive waste.  The Department has

vacillated, having indicated more than once a willingness to seek a negotiated resolution.  And

second, nothing the Department has done up to now obligates New York to bear the costs of

permanent disposal.  Moreover, the absence of a permanent federal repository for the foreseeable

future underscores the lack of any legal consequences flowing from the Department's actions to

date.

**A.      There Has Been No Consummation of the Department of Energy's Decision
Making Process Concerning Responsibility for the Costs of Permanent Disposal.**

Since discussions began in the early 1980's between the federal Department of Energy
and New York concerning disposal costs, the Department has changed its position several times.
The Department initially indicated that a perpetual care fund held by the State Energy Authority
would cover those costs.  Then the Department stated that New York must pay a contractual
disposal fee.  That was followed by extensive negotiations on the topic, and a tentative
resolution, but then the Department unilaterally terminated negotiations.  Next the Department
reiterated that New York must pay a disposal fee.  However, the Department subsequently
offered to use mediation to seek a negotiated resolution.

These unconsummated discussions between the federal government and the State do not
constitute a final decision about disposal cost responsibility.  The Department of Energy's
tentative, indefinite position is *not* "devoid of any suggestion that it might be subject to
subsequent revision or further agency consideration or possible modification."  Fairbanks North
Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 592 (9th Cir. 2008) (internal
quotations omitted) (jurisdictional determination upheld in administrative appeal marked
consummation of agency's decision making process); see also Reliable Automatic Sprinkler Co.,
Inc. v. Consumer Product Safety Comm., 324 F.3d 726, 731 (D.C. Cir. 2003) (agency action is
final only if "definitive").

The back-and-forth, unresolved nature of the federal-State communications on disposal
costs shows that the Department of Energy has not reached the kind of conclusive position
necessary for final agency action.  "If the position is likely to be abandoned or modified before it
is actually put into effect", then "it is not in fact the agency's final position" and "its review
wastes the court's time."  Eagle-Pitcher Industries, Inc. v. EPA, 759 F.2d 905, 917 (D.C. Cir.

1985).  Here the Department of Energy has not stated a definitive position, and consequently the first requirement necessary for final agency action is not present.  Indeed, those communications even beg the question whether the Department has taken any "agency action" as defined in the APA, much less *final* agency action.  See <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 62 (2004) (discussing the "five categories of decisions made or outcomes implemented" by an agency -- "agency rule, order, license, sanction [or] relief" that comprise agency action under the APA, 5 U.S.C. § 551(13)).

**B.     The Department of Energy Has Taken No Action That Determines Legal Rights and Obligations or From Which Legal Consequences Will Flow.**

The Department of Energy's actions to date regarding disposal cost responsibility have been expressions of the agency's opinion about what the law requires, combined with overtures to resolve its and the State's competing views through mediation.  These are not "action(s) . . . by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'."  <u>Bennett v. Spear</u>, 520 U.S. at 178.  Thus, the second requirement for final agency action has not been satisfied.

The State's rights and obligations remain unchanged by the Department's statements.  The Department's actions do not "command [the State] to do or forbear from anything; as . . . bare statement[s] of the agency's opinion, [they] can neither be the subject of 'immediate compliance' nor of defiance."  <u>Fairbanks North Star Borough</u>, 543 F.3d at 593-94, <u>citing</u> <u>FTC v. Standard Oil Co</u>., 449 U.S. 232, 239-40 (1980).  "Up to the present, [the Department of Energy] has 'expresse[d] its view of what the law requires' [of the State] without altering or otherwise fixing its legal relationship."  <u>Fairbanks North Star Borough,</u> 543 F.3d at 594.  "This expression

of views [by the Department] lacks the 'status of law or comparable legal force'" necessary to meet the second finality requirement.  Id.

In addition, the fact that a permanent federal repository does not exist, and incontestably will not be available for decades, undermines any assertion that real legal consequences flow from the Department of Energy's various statements and overtures regarding responsibility for the costs of permanent disposal.  See Nat'l Ass'n of Regulatory Util. Comm'rs, 680 F.3d at 821 (Blue Ribbon Commission estimated in 2011 that selection and evaluation of permanent disposal site would take another 15 to 20 years); New York v. Nuclear Regulatory Comm'n, 681 F.3d at 474 (currently there is no prospective repository site, let alone progress toward actual construction of one); Federal Disposal Strategy at 2, 7 (assuming Congressional authorization, the Department of Energy plans to implement a program with the goal of making a geologic repository available by 2048).  This is not a case where an action is final in that "its impact is sufficiently direct and immediate and has a direct effect . . . on day to day business."  Western Ill. Home Health Care v. Herman, 150 F.3d 659, 662 (7th Cir. 1998), quoting Abbott Labs v. Gardener, 387 U.S. at 151-152.  See FTC v. Standard Oil Co., 449 U.S. at 243 (FTC's issuance of complaint alleging violation of FTC Act "had no legal force or practical effect upon Socal's daily business" and was not final agency action).

In sum, the Department of Energy's actions to date regarding responsibility for the costs of permanent disposal evidence neither the consummated decision making, nor the determination of legal obligations or resultant direct effects necessary to constitute final agency action under the APA.

**<u>CONCLUSION</u>**

For the reasons stated herein, the Court should find that the State's declaratory judgment claim it is not ripe for adjudication, and that there has been no final agency action by the federal government on the question of responsibility for the costs of permanent disposal of the West Valley waste.  Accordingly, plaintiffs respectfully request that the Court dismiss the State's declaratory judgment claim without prejudice.

DATED:  Buffalo, New York
        March 18, 2013

                      ERIC T. SCHNEIDERMAN
                      Attorney General of the State of New York
                      Attorney for Plaintiffs

                      By: <u>/s/ *Timothy Hoffman*</u>
                      Timothy Hoffman
                      Assistant Attorney General
                      Environmental Protection Bureau
                      350 Main Street, Suite 300A
                      Buffalo, New York 14202
                      (716) 853-8400
                      timothy.hoffman@ag.ny.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, et al.,


                    Plaintiffs,
        vs.                                    No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                    Defendants.
_____

CERTIFICATE OF SERVICE

        I hereby certify that on March 18, 2013, I electronically filed the foregoing Memorandum
of Law with the Clerk of the District Court using its CM/ECF system.

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the
                              State of New York
                              Attorney for Plaintiffs

                    BY:       S/ Timothy Hoffman_____
                              TIMOTHY HOFFMAN
                              Assistant Attorney General
                              of Counsel
                              350 Main Street, Suite 300A
                              Buffalo, New York 14202
                              (716) 853-8465
                              Timothy.Hoffman@ag.ny.gov