IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, et al.,

                Plaintiffs,

- v -                          No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                Defendants.

---

**DEFENDANTS' COMBINED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COMPLAINT, AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

## INTRODUCTION

On March 13, Plaintiffs moved to dismiss the sole remaining claim in this litigation: their claim that under the Nuclear Waste Policy Act of 1982 ("NWPA"), the Defendants[1] and not Plaintiffs are responsible for a "disposal fee" concerning the high-level waste now stored at the Western New York Nuclear Service Center at West Valley, New York ("the Center").  ECF No. 46.  Plaintiffs' motion and memorandum were accompanied by, and relied heavily on, a 7-page, single-spaced affidavit signed by Hal Brodie, the General Counsel of Plaintiff NYSERDA, and 92 pages of documents attached to his affidavit, ECF No. 48, to support Plaintiffs' argument that their claim is not ripe and that the challenged actions do not constitute "final agency action." Defendants have also moved to dismiss this case, on the separate ground that the NWPA provides

---

[1] This brief refers to Plaintiffs State of New York, New York State Department of Environmental Conservation, and New York State Energy Research and Development Authority ("NYSERDA") collectively as "Plaintiffs" or "New York" and to Defendants United States of America and Secretary of Energy Ernest J. Moniz collectively as "Defendants" or "DOE."

for exclusive jurisdiction in the United States Courts of Appeals, not the United States District Courts. 42 U.S.C. § 10139(a). Thus, both parties agree that dismissal of the NWPA claim without prejudice is proper, and the motions before this Court concern only the basis for dismissal.

Plaintiffs' motion to dismiss their own complaint based on claimed jurisdictional defects, which Plaintiffs bring under Federal Rule of Civil Procedure 12(b)(1), should be denied for two reasons.[2] First, the motion is procedurally improper because Rule 12(b) does not contemplate motions to dismiss a claim brought by the party that asserted the claim, and such motions are inconsistent with its language and policy. See Argument, § A, infra. Because Plaintiffs could simply opt to dismiss their Complaint under Rule 41(a)(1) – which is the avenue that the Rules' regimen prescribes for cases in this posture – Plaintiffs' Rule 12(b)(1) motion represents an attempt to generate unnecessary jurisdictional fact-finding that is not authorized under the Rules. Defendants accordingly suggest that Plaintiffs' motion should be deemed to be filed under Rule 41(a), and their action dismissed without prejudice by the clerk's office or in an order that does not address Plaintiffs' challenges to their own Complaint.

If the Court chooses not to treat Plaintiffs' motion as a unilateral dismissal of their Complaint under Rule 41(a), Defendants' argument in support of DOE's motion to dismiss presents compelling, alternative jurisdictional grounds for dismissing this claim that would require no fact-finding. As Defendants explain below, the federal district courts lack jurisdiction over claims challenging actions by Defendants to implement the NWPA. Because Defendants' motion

---

[2] Defendants take no position on the merits of Plaintiffs' arguments that their claim is not ripe and that their claim must be dismissed for lack of final agency action. As set forth in their motion to dismiss and in this memorandum, Defendants submit that this Court lacks jurisdiction to make such findings in the first instance with respect to a claim for which the NWPA prescribes exclusive review in the United States Courts of Appeals. See Argument, § B, infra.

2

presents a straightforward ground for dismissal based on an uncontroversial proposition of law, and because that motion would not require the Court to engage in jurisdictional fact-finding, judicial economy would best be served by dismissing the case on the grounds set forth in Defendants' motion.

## BACKGROUND

Plaintiffs filed this action in December 2006, seeking a declaratory judgment concerning DOE's responsibilities at the Center under the West Valley Demonstration Project Act ("WVDPA"), Pub. L. 96-368, 94 Stat. 1347 (1980), and the NWPA, 42 U.S.C. §§ 10101-10270, and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601-9675. The Center was used in the 1960s and early 1970s for spent nuclear fuel reprocessing by a private company operating under a contract with the State, and in the 1980s was the site of a DOE nuclear waste stabilization project (conducted pursuant to the WVDPA). Before the instant lawsuit was filed, DOE and New York spent decades embroiled in a dispute about the scope of that project and the proper allocation of Site remediation costs under the WVDPA and other statutes.

Shortly after the lawsuit was filed, the parties entered into a stipulation and sought an order staying the litigation in this case in order to attempt to resolve New York's claims through alternative dispute resolution. See Stipulation and Order dated June 13, 2007, ECF No. 11. On October 27, 2009, the parties filed a proposed consent decree partially resolving the lawsuit. ECF No. 30. On August 17, 2010, after a hearing on the parties' motions to enter the decree, the Court entered an order granting the relief requested. See ECF No. 37. As a result of the consent decree,

all claims except Plaintiffs' Fourth claim were dismissed.   Id. ¶ 41.[3]

The State's sole remaining claim alleges that under the NWPA, DOE must pay any costs relating to disposal of high-level radioactive waste now stored at the Center, including "any fees required by Section 302 of the NWPA."   Compl. ¶¶ 136-39, ECF No. 1.   The State contends that DOE must pay the "disposal fee" associated with these wastes, when a repository ultimately becomes available, because the waste results from "atomic energy defense activities." Id. ¶¶ 138-39.   The Complaint seeks a declaration that DOE, not New York, will be responsible for any fees or costs due under the NWPA in connection with the ultimate disposition of this waste.   Id. ¶ 3 & Prayer for Relief, ¶ 8.

On March 18, 2013, Plaintiffs filed a motion seeking to dismiss their own Complaint based on a lack of final agency action and lack of ripeness.   ECF Nos. 46-48.   For the reasons set forth below, Plaintiffs' motion is procedurally improper and should be deemed a notice of dismissal under Federal Rule 41(a)(1) that results in administrative closure of this case.   Alternatively, the Court should dismiss the claim on the grounds set forth in Defendants' motion to dismiss.   See Argument § B, infra.

## ARGUMENT

**A.     Plaintiffs' Motion Should be Denied, or Deemed a Notice of Dismissal Under Rule 41(a)(1), Because Rule 12(b)(1) Does Not Permit a Party to Move to Dismiss Its Own Complaint.**

New York's motion argues, essentially, that because of changes in the expected time-frame for designation of a high-level waste repository under the NWPA, subject matter jurisdiction over the

---

[3] The litigation was stayed until November 29, 2012, when the Court entered a case management order proposed by the parties that set deadlines for concurrent motions to dismiss the remaining claim, ECF No. 39, which has subsequently been modified several times by consent of the parties. ECF Nos. 41-45, 49.   Defendants have not answered Plaintiffs' Complaint.

Complaint existed at the time it was filed, but has since dissipated.[4]  The federal rules provide a simple solution for parties who believe that jurisdiction for their claims no longer exists before an answer or summary judgment motion has been filed: they may unilaterally file a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), which requires no action by either the defendant or the Court. The rationale for not requiring the consent of the court or opposing party at this stage is that before the defending party has devoted any significant resources to the action, the interests of justice are furthered if plaintiffs are able to dismiss their complaint without impediments.  Wright & Miller, Federal Practice and Procedure §2362 (Rule's purpose "is to permit the plaintiff voluntarily to dismiss the action when no other party will be prejudiced."); Harvey Aluminum, Inc. v. Am. Cyanamid Co., 203 F.2d 105, 108 (2nd Cir. 1953) (rule's purpose is "preventing arbitrary dismissals after an advanced stage of a suit has been reached"); Thorp v. Scarne, 599 F.2d 1169, 1176 (2nd Cir. 1979) (Rule 41(a)(1)(A), when applicable, is the "shortest and surest route" to end a case).  Plaintiffs easily could have, and should have, followed this procedure, which would in no way prejudice them.  Williams v. Clarke, 82 F.3d 270, 273 (8th Cir. 1996) (holding that voluntary dismissal "'render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought'").

After the answer stage, the burden on a plaintiff to dismiss its complaint increases: plaintiffs must obtain the consent of all parties in order to stipulate to dismissal, rule

---

[4] New York argues that the harms it asserted at the time of its filing are no longer imminent because circumstances surrounding Yucca Mountain's availability have changed, and that its claim is therefore unripe.  With respect to Plaintiffs' position that there has been no final agency action, Plaintiffs identify no "changed circumstances" that have occurred since their lawsuit was filed. See Pls.' Mem. 2, ECF No. 47 (at time Plaintiffs filed complaint, the "State included a claim to determine responsibility for the costs of permanent disposal even though the United States had made no definitive decision regarding responsibility for disposal costs, or taken any action that determined legal rights or had legal consequences.").

41(a)(1)(A)(i),[5] and failing that, a plaintiff must seek a court order, which will be granted only on "terms that the court considers proper," and will not be granted if the defendant has pleaded a counterclaim unless the counterclaim can still remain pending for independent adjudication. FED. R. CIV. P. 41(a)(2). The purpose of requiring a court order under these circumstances, where the opposing party is unwilling to stipulate to dismissal, is to allow the court to craft terms designed to protect defendants from prejudice. See Cross Westchester Dev. Corp. v. Chiulli, 887 F.2d 431, 432 (2d Cir. 1989); see also Rule 41, advisory committee notes, 1946 amendment (amending rule so that summary judgment motion, in addition to answer, will cut off plaintiff's right to dismiss unilaterally, because such motions "may require even more research and preparation than the answer itself" and thus present good reason to prevent "a voluntary dismissal by the adversary without court approval.").

If, on the other hand, the defending party believes that jurisdiction does not exist and that the Complaint should be dismissed, the proper vehicle is a motion under Rule 12(b)(1). The plain language of Rule 12 does not permit a plaintiff to assert a defense to its own claim. It provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: lack of subject-matter jurisdiction . . . ." FED. R. CIV. P. 12(b)(1). The phrase "defense to a claim" indicates that only a party against which the claim is brought may assert a defense. See Black's Law Dictionary 482 (9th ed. 2009) (defining "defense" as "[a] defendant's stated reason why the plaintiff or prosecutor has no valid case . . . ." (emphasis added)). The Rule's use of the word "party" rather than "defendant" contemplates that a plaintiff may assert a defense to a

---

[5] Defendants are willing to stipulate to dismissal of this action without prejudice, provided the stipulation is not accompanied by findings of fact.

counterclaim against it. See, e.g., Fin. Inst. Ret. Fund v. Office of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992) (affirming a district court's granting of plaintiffs' motion to dismiss counterclaims). Here, DOE has not brought a counterclaim, and New York explicitly requests "an order pursuant to Fed. R. Civ. P. 12(b)(1) dismissing Plaintiffs' declaratory judgment claim without prejudice." Pls.' Notice of Mot., ECF No. 46 (emphasis added). Since this amounts to a plaintiff asserting a defense to its own claim, New York's motion must fail. See FED. R. CIV. P. 12(b); accord Furniture Brands Int'l, Inc. v. United States, 807 F. Supp. 2d 1301, 1307 (Ct. Int'l Trade 2011) (holding that Rule 12(b)(1) of the Rules of the U.S. Court of International Trade (the pertinent language of which is identical) "is not available to a party seeking to assert a would-be 'defense' to its own claim for relief"). Granting, or even entertaining, Plaintiffs' motion to dismiss their own Complaint would do violence not only to the language of Rule 12(b), but to its underlying purpose: "to provide for a quick presentation both of objections and of defenses and to avoid the delay incident to successive motions prolonging the final disposition of the case." Sadler v. Pa. Refining Co., 33 F. Supp. 414, 415 (W.D. S.C. 1940). See also FED. R. CIV. P. 1 (rules shall be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In summary, Plaintiffs' motion is an attempt to obtain jurisdictional findings of fact from this Court in a manner that is not authorized by the Rules and, DOE submits, inconsistent with their policy. For that reason, the Court should deem Plaintiffs' motion to be a notice of dismissal under Rule 41(a)(1)(A)(i), and direct the clerk of the Court to enter a docket entry dismissing the case. Alternatively, the Court should deny Plaintiffs' motion and dismiss on the grounds stated in Defendants' Motion to Dismiss.

**B.      This Court Lacks Jurisdiction Over New York's NWPA Claim Because Claims Arising Under the NWPA Must be Brought in the Court of Appeals.**

Plaintiffs' remaining claim seeks relief under the NWPA.  The claim concerns which party - New York or DOE - must pay a statutorily designated fee if and when New York opts to ship high level waste ("HLW") at the Center to a statutorily identified repository for permanent disposal of the waste.  New York's claim must be dismissed because under the special statutory scheme prescribed by the NWPA, jurisdiction over that claim lies exclusively in the United States Court of Appeals.   That is the forum specified in the NWPA for claims related either to the waste repository the statute prescribes or to the mechanism created by Congress to finance it.   42 U.S.C. § 10139(a); see also 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute").  Where, as here, "a federal statute provides for direct review of an agency action in the court of appeals, such '[s]pecific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts." Nuclear Info. and Resource Ctr. v. U.S. Dep't of Transp., 457 F.3d 956, 958-59 (9th Cir. 2006); Gen. Fin. Corp. v. FTC, 700 F.2d 366, 368 (7th Cir. 1983) (a plaintiff "may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court . . . ; the specific statutory method, if adequate, is exclusive.").  Dismissal of Plaintiffs' claim on that basis is proper pursuant to Rule 12(b)(1).

Congress enacted the NWPA "to establish a comprehensive program for the disposal of high-level radioactive waste and spent nuclear fuel . . . generated by civilian nuclear power reactors."  Nat'l Ass'n of Regulatory Utility Comm'rs v. U.S. Dep't of Energy, 851 F.2d 1424,

8

1425 (D.C. Cir. 1988); Gen. Elec. Uranium Mgmt. Co. v. U.S. Dep't of Energy, 764 F.2d 896, 898 (D.C. Cir. 1985) (NWPA established a "comprehensive scheme for disposal of [spent nuclear fuel] and other high-level radioactive waste . . ."). The Act contemplates that such wastes will eventually be stored in permanent federal repositories "that will provide a reasonable assurance that the public and the environment will be adequately protected" from the hazards they pose. See 42 U.S.C. § 10131(b)(1). To ensure that the costs of designing, constructing, and operating such repositories are borne by the appropriate parties, the Act provides for a Nuclear Waste Fund composed of payments made by the generators and owners of such waste and spent fuel. 42 U.S.C. §10222 ("Section 302"). Congress intended that the fund would be used to pay for the costs of HLW disposal at a permanent repository. Gen. Elec. Uranium Mgmt. Co., 764 F.2d at 898.

New York premises its claim that the federal government should pay the costs of disposal of any high level waste at the Center on NWPA Section 8(b) (42 U.S.C. §10107) and Section 302. Compl. ¶¶ 116, 139. This Court lacks jurisdiction to resolve questions arising under the cited provisions because the NWPA requires that suits concerning the actions of the Secretary related to disposal of HLW and spent nuclear fuel, and the fund created to ensure the equitable allocation of costs for such disposal, must be brought in the federal circuit courts. 42 U.S.C. § 10139(a) ("Section 119"). Section 119 provides that:

> the United States courts of appeals shall have original and exclusive jurisdiction over any civil action– (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part; [or] (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part.

Id. (emphasis added). This jurisdictional provision lies within Part A of Subchapter I of the

9

NWPA.[6]  The courts that have ruled on the issue have uniformly held that claims challenging the Secretary's actions to implement the NWPA, even if they do not rely on Part A of Subchapter I, must be brought in the courts of appeals.[7]  In particular, the portions of Section 302 that establish and govern the Nuclear Waste Fund are subject to the jurisdictional requirements of Section 119. See Compl. ¶¶ 116, 139; see also, General Elec. Uranium Mgmt. Co., 764 F.2d at 901 (finding fee matters under Section 302 subject to the original and exclusive jurisdiction of the courts of appeals).  Section 302 "establishes a system of fees to be levied on utilities which generate nuclear power in order to finance the establishment and operation of a fund to pay for the transportation, storage and disposal of spent nuclear fuel and high-level radioactive wastes." Wis. Elec. Power Co., 778 F.2d at 2.  For cases arising under its fee provisions, exclusive

---

[6] Part A, entitled "Repositories for Disposal of High-Level Radioactive Waste and Spent Nuclear Fuel," comprises sections 10131 through 10145.   The part "establishes procedures for disposal of high-level radioactive waste and spent nuclear fuel in repositories . . . ." Natural Res. Def. Council v. Abraham, 244 F.3d 742, 743 (9th Cir. 2001).

[7] See, e.g., Gen. Elec. Uranium Mgmt. Co., 764 F.2d at 901 (fee questions relating to Section 302 must be brought in the courts of appeals); Neb. Pub. Power Dist. v. United States, 590 F.3d 1357, 1367 (Fed. Cir. 2010) (listing decisions holding that Section 119 is not limited to matters arising under Part A of Subchapter I and noting that "[n]o circuit court has taken the opposite position"); PSEG Nuclear, L.L.C. v. United States, 465 F.3d 1343, 1349 (Fed. Cir. 2006) (actions that "relate to the creation of repositories for spent nuclear fuel fall within the class of actions subject to review by the courts of appeals under section 119"); Tennessee v. Herrington, 806 F.2d 642, 647 (6th Cir. 1986) (Section 119 conferred original jurisdiction over case brought under § 10161(h) (located in Part C of Subchapter I); id. at 651; W. Shoshone Nat'l Council v. United States, 408 F. Supp. 2d 1040, 1049 (D. Nev. 2005) (judicial review of agency action taken under NWPA "concerning site recommendation, characterization, approval, and congressional review of Yucca Mountain as a nuclear repository" to the extent authorized, "would lie in the court of appeals"); Nevada v. Burford, 708 F. Supp. 289, 301 n.14 (D. Nev. 1989) (court lacked subject matter jurisdiction over constitutional challenge to NWPA amendments because Congress "vested original and exclusive jurisdiction over such matters arising under the NWPA with the courts of appeal"); Wis. Elec. Power Co. v. Hodel, 626 F. Supp. 424 (D.D.C. 1984) (dismissing for lack of jurisdiction because courts of appeals have exclusive jurisdiction over NWPA claims), aff'd., Wis. Elec. Power Co. v. DOE, 778 F.2d 1, 3 (D.C. Cir. 1985); cf. Natural Res. Def. Council v. Abraham, 244 F.3d at 747 ("Because DOE Order 435.1 is not a decision under Part A of Subchapter I or of any other section of NWPA, we lack original or exclusive jurisdiction over this action.") (emphasis added).

jurisdiction lies in the courts of appeals.  Gen. Elec. Uranium Mgmt. Co., 764 F.2d at 902; Wis. Elec. Power Co., 626 F. Supp. at 426; PSEG Nuclear L.L.C., 465 F.3d at 1349 ("[A]gency actions mandated under Title III which relate to the creation of repositories for spent nuclear fuel fall within the class of actions subject to review by the courts of appeals under section 119.").

Although the Second Circuit Court of Appeals has not ruled upon the NWPA's jurisdictional provisions, there is no basis to believe that it would reach a different result than the many circuits that have found – or assumed – original jurisdiction over a wide range of NWPA claims.  The statute's language, structure, and policy compel the same result here, for the reasons set forth in General Electric and other cases that have interpreted the NWPA's jurisdictional provisions.  In addition, the rationale of General Electric follows Supreme Court and Second Circuit cases holding that, where ambiguity exists about the applicability or exclusivity of a statutory grant of jurisdiction to the courts of appeals, exclusive jurisdiction in the courts of appeals should be found in order to effectuate Congress' intent.  See Fla. Power & Light, Co. v. Lorion, 470 U.S. 729, 745 (1985) ("Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals."); Natural Res. Def. Council v. Abraham, 355 F.3d 179, 193 (2nd Cir. 2004) ("[W]hen there is a specific statutory grant of jurisdiction to the court of appeals, it should be construed in favor of review by the court of appeals.") (emphasis in original) (citing General Electric with approval); Clark v. Commodities Futures Trading Comm'n, 170 F.3d 110, 114 (2nd Cir. 1999) (ambiguity favors jurisdiction in the court of appeals); accord Neb. Pub. Power Dist., 590 F. 3d at 1366-67 (same).  Because the NWPA provides for exclusive jurisdiction in the Courts of Appeals, and the

State's claim arises under the NWPA, this Court lacks jurisdiction to resolve it and should dismiss it.[8]

### C. The Court Should Dismiss the Case on the Grounds Set Forth in DOE's Motion to Dismiss, Which Requires No Jurisdictional Fact-finding, in the Interests of Judicial Economy.

Plaintiffs' motion to dismiss under Rule 12(b)(1) is a "speaking" motion, or one that challenges the factual allegations asserted, curiously enough, in Plaintiffs' own Complaint. Wright & Miller, Federal Practice and Procedure §2362.[9] Resolving the threshold issues raised in the motion thus would require fact-finding by this Court. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993). Plaintiffs' motion relies on a 7-page, single-spaced affidavit and 92 pages of document-exhibits filed in support of their motion. ECF No. 48. The memorandum in support of their motion includes a lengthy recitation of facts, Pls.' Mem. 2-8, most of which are outside of anything pleaded in their Complaint, and which rely (when they cite to anything) upon the Brodie declaration and attachments. Although DOE is not responding to the substance of Plaintiffs' motion, which is not authorized under the Federal Rules, DOE

---

[8] Under the federal transfer statute, 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ." Plaintiffs have not sought to have their claim transferred under this provision, which specifies that as a precondition for transfer, a court must find that the transferee court would have had jurisdiction over the claim at the time it was filed. Because Plaintiffs contend that their claim is unripe and that final agency action has not occurred, under their theory of the case, transfer would be improper because the transferee court also lacks jurisdiction to hear the claim. See, e.g., United States v. Heller, 957 F.2d 26, 27 (1st Cir. 1992) (declining to transfer action to proper court where action would be time-barred).

[9] Because speaking motions normally shift the burden of proving jurisdiction to the party asserting jurisdiction, consideration of Plaintiffs' motion would place DOE in the odd posture of having to defend the allegations asserted in Plaintiffs' Complaint. The perverse result of applying the ordinary presumptions under Rule12(b) to this case illustrate why the Rule should not be interpreted to allow a plaintiff to move to dismiss its own claim, see Argument, § A, supra.

12

disagrees with many of the facts as they are set forth in Plaintiffs' memorandum, such as the characterization of the parties' history of discussions regarding the disposal fee issue. Id. 5-7.

Plaintiffs predicate their request for relief upon a number of factual assertions, including the following:

- At the time Plaintiffs brought their action in 2006, "it appeared that a permanent federal repository for the disposal of [HLW] might be available reasonably soon." Pls.' Mem. 1-2; see also id. at 7 (at time lawsuit was filed, "it appeared that a permanent repository . . . might be available as early as 2010).

- The United States "had made no definitive decision regarding responsibility for disposal costs" Id. at 2; id. at 14 (same).

- "There will be no permanent disposal repository for at least several decades." Id. at 2.

- "Since discussions began in the early 1980's between the federal Department of Energy and New York concerning disposal costs, the Department has changed its position several times." Id. at 15.

It is unclear which of these (or any other) factual assertions Plaintiffs believe are necessary for the Court to grant the relief they seek, and which are simply asserted as "background." Nonetheless, several elements of the "defenses" Plaintiffs present also entail an inquiry that is either factual or mixed (i.e., partly factual and partly legal). To determine whether the action is ripe, for example, the Court must necessarily determine "the hardship to the parties of withholding court consideration." Id. at 10. To determine whether the action is sufficiently final,[10] the Court would be required to review "[DOE's] correspondence with the State." Id. at 12; see also id. at 15 (characterizing positions taken in past correspondence between the parties). Because resolving these questions would require the Court to mediate contested factual issues concerning the

---

[10] Only a "final decision or action" is reviewable under the NWPA. 42 U.S.C. § 10139(a).

13

long-running dispute at West Valley, including the history of the parties' negotiations, the Court (if it does not opt to treat Plaintiffs' motion as a dismissal under Rule 41(a)(1)) should first address the grounds for dismissal set forth in Defendants' motion. That motion presents a clear and compulsory basis for dismissal that requires no fact-finding by the Court, which might well obviate the need for this Court to address the issues raised in Plaintiffs' motion. Marathon Oil Co. v. Ruhrgas, 145 F.3d 211, 231 (5th Cir. 1998) (en banc) (J. Higginbotham, dissenting) ("In general, district courts must avoid ruling on difficult, complex, or novel matters, if an easier and equally appropriate ground for decision is available to them.").[11]

Defendants' motion and Section B of this memorandum explain that because the NWPA provides for exclusive jurisdiction of claims arising under the statute, this Court lacks jurisdiction to proceed to the merits. See 42 U.S.C. § 10139(a) ("the United States courts of appeals shall have original and exclusive jurisdiction over any civil action– (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part"); Gen. Elec. Uranium Mgmt. Co., 764 F.2d at 898 (D.C. Cir. 1985) (vacating district court's decision that it had subject matter jurisdiction to decide NWPA claim). Defendants' motion is based on an interpretation of the NWPA's jurisdictional scheme that has been widely endorsed by the federal courts that have ruled upon it, and thus presents a straightforward path for disposition of this case without the need for fact-finding.

Plaintiffs' motion argues that the Court may consider the grounds for dismissal Plaintiffs

---

[11] The Supreme Court, after taking the case, endorsed the views expressed in Judge Higginbotham's dissent from the Fifth Circuit's en banc decision, joined by seven of the judges. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 582 (1999) (quoting dissent); id. at 586 (quoting dissent with approval); id. at 587 (same).

urge first, Pls.' Mem. 9,[12] and Defendants agree that the Court has the discretion to dismiss the NWPA claim based on any jurisdictional defect. In Ruhrgas AG v. Marathon Oil Co., the Supreme Court held that there is no hierarchy of jurisdictional issues, and observed that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." 526 U.S. at 585. But Supreme Court and Second Circuit precedents – including Ruhrgas itself -- counsel that when courts choose among competing threshold grounds for dismissal, considerations of judicial economy should be paramount. Because Plaintiffs' motion would require extensive fact-finding, judicial economy weighs in favor of a ruling on Defendants' Motion to Dismiss. Ruhrgas 526 U.S. at 587-88 (although courts normally first resolve questions of subject-matter jurisdiction that involve "no arduous inquiry," court did not abuse discretion by first deciding "straightforward personal jurisdiction issue presenting no complex question of state law"); Marathon Oil Co., 145 F.3d at 232 (J. Higginbotham, dissenting) ("efficiency concerns can instruct the decision to dismiss for a defect in one jurisdictional basis as opposed to another"); Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 520 (S.D.N.Y. 2006) (deciding case on forum non-conveniens grounds, before resolving threshold subject matter jurisdiction questions, where addressing issues in reverse order "would likely require a substantial factual record, which in turn would demand a significant amount of additional discovery and extended pretrial proceedings"); In re Facebook, Inc., IPO Sec. and Derivative Litig., No. 12 Civ. 4156, 2013 WL 525158, at *7 (Feb. 13, 2013 S.D.N.Y.) (issues of "procedural convenience, efficiency and judicial economy" should inform sequence for determining threshold issues). Because the Court can dispose of this

---

[12] To the extent Plaintiffs imply that their ripeness argument should be decided first because of its constitutional dimensions, their premise is incorrect. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n.2 (1998) (stating that "a statutory standing question can be given priority over an Article III question.").

case most efficiently by ruling on the narrow legal question set forth in Defendants' motion, it should decline Plaintiffs' invitation to engage in non-merits fact-finding.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to dismiss their own complaint should be granted without findings, and the Clerk's office should be instructed to enter the dismissal as a notice of dismissal under Rule 41(a).   Alternatively, the Court should deny Plaintiffs' motion to dismiss, and dismiss the Complaint on the grounds stated in Defendants' motion.

Dated: June 10, 2013.                                   Respectfully submitted,

WILLIAM J. HOCHUL, JR.
United States Attorney
MARY K. ROACH
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5866
mary.k.roach@usdoj.gov


ROBERT G. DREHER
Acting Assistant Attorney General

By:/s/ *Stacey Bosshardt*
STACEY BOSSHARDT
D.C. Bar No. 458645
Stacey.bosshardt@usdoj.gov
(202) 514-2912
Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2013, I electronically filed the foregoing Defendants' Combined Memorandum in Opposition to Plaintiffs' Motion to Dismiss Complaint and in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all listed counsel of record.

/s/ *Stacey Bosshardt*
Stacey Bosshardt