IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
———————————————————————————

STATE OF NEW YORK, et al.,

                 Plaintiffs,

       - v -                             No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                 Defendants.

———————————————————————————

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Plaintiffs

By: /s/ *Timothy Hoffman*
Timothy Hoffman
Assistant Attorney General
Environmental Protection Bureau
350 Main Street, Suite 300A
Buffalo, New York 14202
(716) 853-8400
timothy.hoffman@ag.ny.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, et al.,

                Plaintiffs,

      - v -                               No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                Defendants.
_____

## INTRODUCTION

       Plaintiffs the State of New York, et al. (collectively, the "State") have moved to dismiss their declaratory judgment claim concerning permanent disposal costs for high-level radioactive waste currently stored in West Valley, New York, on the grounds that that claim is not ripe and there has been no final agency action.  The State seeks dismissal on those specific grounds so that, in the event a permanent repository becomes available in the future and the United States seeks to recover permanent disposal costs from the State, there is no question that the State may seek judicial relief at that time.

       Defendants United States, et al. (collectively, the "United States) do not take a position on whether the State's claim is ripe or a final agency decision was made, but have cross-moved to dismiss the State's claim on the ground that exclusive jurisdiction to hear it is in the courts of appeals.  The State files this reply brief in further support of its motion to dismiss and in opposition to the United States' motion.

       Contrary to the United States' argument, the State's motion is properly submitted under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Nor does the United States contest that

1

the Court may consider the threshold issue of ripeness before it addresses the United States'
statutory jurisdiction argument.  Moreover, because the State has shown that its declaratory
judgment claim is not ripe and the United States does dispute that, the Court should dismiss the
State's claim on that ground.

Because the State's claim should be dismissed for lack of ripeness, there is no reason for
the Court to address the alternative ground for dismissal argued by the United States.  If the
Court nonetheless reaches that issue, it should find that exclusive jurisdiction over the State's
claim is not in the courts of appeals because such jurisdiction is limited to petitions for review of
a final agency decision based on an administrative record, and the State's claim is not such a
petition for review.  Instead, the State sought a declaratory judgment regarding responsibility for
the costs of permanent disposal for protective reasons, before a final agency decision had been
made on that question.  As a result, there is not an administrative record on which a circuit court
of appeals could rely, and a decision on the merits of the State's claim would require fact-finding
by a district court.

## ARGUMENT

### I.

### THE COURT SHOULD GRANT THE STATE'S MOTION TO DISMISS.

As the State has shown in its opening brief, its request for a declaratory judgment
regarding responsibility for permanent disposal costs is not ripe for adjudication and should be
dismissed because:  (1) the dispute between the State and the United States about permanent
disposal costs is dependent on future contingent events, including the selection and construction
of a permanent disposal facility, which the federal government has indicated will not happen for

decades; and (2) there has been no final agency action regarding responsibility for those costs. Pl.'s Br. (Dkt. 47) at 11-17.

The United States "take[s] no position on the merits of Plaintiffs' arguments that their claim is not ripe and that their claim must be dismissed for lack of final agency action." Def.'s Br. (Dkt. 50-1) at 2 n. 2.  Instead, it opposes the State's motion primarily on two grounds:  that the State may not move to dismiss its own claim under Rule 12(b)(1), and that the United States' motion asserting jurisdiction in the courts of appeals presents a more "clear and compulsory basis for dismissal" than lack of ripeness.  Def.'s Br. at 14.  Neither argument is correct.

A.        **The State May Move to Dismiss Under Rule  12(b)(1).**

Under the plain language of Rule 12(b)(1) of the Federal Rules of Civil Procedure, "a *party*" -- which includes a plaintiff -- may move to dismiss a claim for lack of subject-matter jurisdiction (emphasis added).  The United States argues that a plaintiff may not move to dismiss its own claim, as compared to a counterclaim, because the Rule allows dismissal based on a "defense to a claim," which "indicates that only a party against which the claim is brought may assert a defense."  Def.'s Br. at 6.  But the Rule does not state that a plaintiff may not raise a defense to its own claim, and district courts have allowed plaintiffs to raise jurisdictional defenses to their own claims under Rule 12(b)(1).  Similarly, appellate courts have dismissed cases for lack of subject-matter jurisdiction at a plaintiff's request.  Based on the plain language of Rule 12(b)(1), and those decisions, this Court should consider the State's Rule 12(b)(1) motion.

In Mata v. Eclipse Aerospace, Inc., 435 B.R. 894, 901 (Bankr. D. Del. 2010), the court ruled that it could consider the merits of a plaintiff's Rule 12(b)(1) motion, stating that "[w]hile a plaintiff's dismissal of its own complaint for lack of subject matter jurisdiction is unusual, courts

are not precluded from considering jurisdiction under such a motion."  The court also criticized

the propriety of Rule 41 as a recourse for a plaintiff who seeks dismissal for  lack of subject

matter jurisdiction "because subject matter jurisdiction has its roots in the constitutional concerns

of federalism, while Rule 41 is premised on judicial economy and equity."  Id.

The District Court for the Southern District of New York has also considered Rule

12(b)(1) motions submitted by plaintiffs.  In Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,

305 F. Supp. 803, 807-08 (S.D.N.Y. 1969), the court granted the plaintiffs' Rule 12(b)(1) motion

to dismiss their breach of contract complaint for insufficiency of the amount in controversy.  The

court explained that it would be "anomalous" to treat a plaintiff's Rule 12(b)(1) motion

differently than another party's.  Id. at 809.

In Boggs v. Die Fliedermaus, LLP, 2004 U.S. Dist. LEXIS 12883 (S.D.N.Y. 2004), the

plaintiffs moved to dismiss their state-law claims after their federal-law claims had been

resolved.  The Southern District held that it did not have to decide the question of whether a

plaintiff may properly move for dismissal under Rule 12(b)(1) because the court could dismiss

the remaining state-law claims for lack of subject matter jurisdiction *sua sponte*. As that decision

properly reasons, this Court may treat the State's motion as an invitation to address ripeness of

its own accord in lieu of determining whether the State may file a Rule 12(b)(1) motion.

Appellate courts, including the Supreme Court, have also been willing to consider

challenges to subject matter jurisdiction raised by plaintiffs on appeal.   In Capron v. Van

Noorden, 6 U.S. 126, 126-27 (1804), the Court reversed the lower court's decision for lack of

subject matter jurisdiction at the plaintiff's request.   More recently the Eleventh Circuit granted

the request of several petitioners, including New York, to dismiss a petition for review for lack

of subject matter jurisdiction.  Friends of the Everglades v. EPA, 699 F.3d 1280, 1287-88 (11th

4

Cir. 2012).  Like the claim that the State seeks to dismiss here, that petition was filed

protectively.  Id. at 1283.

The United States fails to advance compelling reasons why the Court should decline to

consider the State's Rule 12(b)(1) motion.  The United States emphasizes the availability of Rule

41(a)(1)(A) as a mechanism by which a plaintiff can unilaterally dismiss its own action. Def.'s

Br. at 5-6.  However, New York does not argue that it could not utilize Rule 41 in order to

dismiss this action.  It argues that it need not do so, and can use Rule 12(b)(1) as well.

The United States also argues that unilaterally dismissing under Rule 41 would not

prejudice the State (Def.'s Br. at 5), but that is not correct.  The State has moved to dismiss on

ripeness and finality grounds under Rule 12(b)(1) rather than unilaterally dismissing under Rule

41 in order to ensure that, in the event a permanent repository becomes available in the future,

and the federal government  makes a final decision that the State is responsible for West Valley

waste permanent disposal costs and seeks to compel payment of those costs, there is no question

that the State may seek judicial relief at that time.

The United States' other arguments are similarly unavailing. It argues that a plaintiff may

not raise a defense to its own claim, Def.'s Br. at 7, but in support of this proposition cites

decisions that are of limited value.  It relies on Financial Institutions Retirement Fund v. Office

of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992), in which the Second Circuit implicitly

backed a plaintiff's right to seek dismissal of a counterclaim under Rule 12(b)(1). That precedent

has nothing to do with whether the State can advance a defense against its own claim under that

rule.

The United States also relies on Furniture Brands International, Inc. v. United States, 807

F. Supp. 2d 1301, 1307 (Ct. Int'l Trade 2011), which held that Rule 12(b)(1) of the Rules of the

United States Court of International Trade (which are identical, in pertinent part, to the Federal Rules of Civil Procedure) do not permit a plaintiff to advance a defense to its own claim. Def.'s Br. at 7. This single decision does little to compete with the decisions from courts that utilize the Federal Rules of Civil Procedure and have allowed plaintiffs to file motions to dismiss under Rule 12(b)(1).

The last argument that the United States raises is that allowing the State's motion would "do violence" to Rule 12(b)'s underlying purpose of disposing of cases without delay.  Def.'s Br. at 7.  The United States fails to explain, however, why dismissing a claim at a plaintiff's request interferes with the prompt determination of actions.

**B.      The Court Should Dismiss the State's Claim on Ripeness Grounds Without Reaching the Issue of Statutory Jurisdiction.**

The United States also argues that the Court should dismiss the State's claim on statutory jurisdiction grounds, rather than for lack of ripeness.  But the United States acknowledges, as it must and as the Supreme Court has observed, that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."  Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 585 (1999).   For example, in Connecticut v. Duncan, 612 F.3d 107, 112 (2d. Cir. 2010), the Second Circuit dismissed a complaint against the Department of Education on ripeness grounds without deciding whether the court lacked statutory jurisdiction. Similarly, in Can v. United States, 14 F.3d 160, 162 n.1 (2d. Cir. 1994), the Second Circuit dismissed a case under the political question doctrine, which it characterized as a threshold question of justiciability, because that was "a less knotty question" than other jurisdictional issues.

In In re Facebook, Inc., 2013 U.S. Dist. LEXIS 19631 , at *14-*23 (S.D.N.Y. 2013), the Southern District of New York rejected the plaintiff's argument that its motion to remand the

6

case to state court for lack of statutory subject matter jurisdiction had to be addressed before defendant's motion to dismiss on the grounds of venue, standing, and ripeness.  The court stated: "precedent indicates that, in appropriate circumstances, a federal court has the discretion and leeway to dismiss a case based on certain threshold issues . . . [i]n particular, the issues of venue, derivative standing and ripeness are the sort of threshold question[s] that may be resolved before addressing jurisdiction."  Id. at *19-*20 (citing Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005) (internal quotations omitted)); see also Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 514-16 (S.D.N.Y. 2006) (distinguishing between non-discretionary and discretionary grounds for dismissal for lack of jurisdiction, describing ripeness as among the latter, and holding that "the courts may rely as appropriate on either . . . to support dismissal of actions that do not implicate resolution of the merits").

In determining the ground on which to dismiss a claim, courts have uniformly held that concerns of judicial economy, fairness, and restraint are paramount.  In Sinochem Int'l Co. v. Malay. Int'l. Shipping Corp., 549 U.S. 422, 432 (2007), the Supreme Court concluded that a court could dismiss a case on forum non conveniens grounds as a threshold matter without otherwise addressing jurisdiction, "when considerations of convenience, fairness, and judicial economy so warrant."  In Turedi, 460 F. Supp. 2d at 516, the court stated that when presented with "the complexity or novelty of the legal issues that the jurisdictional challenge raises. . . and judicial inquiry into highly sensitive political or public policy questions," courts may "turn[] instead to a more easily resolvable non-merits discretionary question."  See also Ruhrgas Ag, 526 U.S. at 586-87 ("concerns of judicial economy and restraint" can outweigh federalism in the analysis of which jurisdictional ground is a preferable basis for consideration and dismissal); In re Facebook, Inc., 2013 U.S. Dist. LEXIS 19631 at *20 ("procedural convenience, efficiency and

judicial economy warrant consideration of the threshold dismissal issues" of venue, standing, and ripeness before other jurisdictional questions).

As noted in the State's opening brief, its claim involves contingent future events that implicate serious questions of public policy, warranting dismissal on ripeness grounds.  Pl.'s Br. at 10-12.  Moreover, judicial economy militates in favor of dismissing the State's declaratory judgment claim for lack of ripeness because, as discussed above, the United States does not take a position on the merits of the State's arguments that its claim is not ripe and that no final agency decision has been made.  Somewhat inconsistently, the United States also contends that the Court would have to resolve factual issues to decide those questions but it fails to identify any relevant factual disputes.  See Def.'s Br. at 13.

In any event, a basic fact upon on which the State relies to establish the lack of ripeness -- that there will be no permanent repository for high-level radioactive waste for at least several decades -- is beyond dispute, having been acknowledged by the federal government and recognized by the courts.  Pl.'s Br. at 3-4, 17.  The State has also asserted that the Department of Energy has not taken final agency action on West Valley waste disposal cost responsibility but, while the United States implies that the Court would have to make a factual finding on that question, the United States also does not dispute that no final decision was ever made.[1]  In the absence of any genuine dispute that the State's declaratory judgment claim is not ripe for review, judicial economy dictates that the claim be dismissed on that ground.

_____

[1] Even if the United States did dispute that issue, this Court may appropriately consider the factual and legal issues bearing on the threshold question of ripeness (see In re Facebook, Inc., 2013 U.S. Dist. LEXIS 19631 at *20), and here the State has clearly demonstrated that the Department of Energy never made a final decision.

## II.

### THE COURT SHOULD DENY THE UNITED STATES'
### MOTION TO DISMISS.

The United States has moved to dismiss New York's declaratory judgment claim on the ground that the courts of appeals have exclusive jurisdiction to review that claim under the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10139(a).  This Court does not need to reach that question because, as explained above, the United States has not taken a position disputing that the State's claim is not ripe and thus the Court should dismiss the claim on ripeness grounds, rendering the United States' motion moot.

But if the Court reaches that question, it should conclude that the courts of appeals do not have jurisdiction over the State's claim.  The United States argues that the circuit courts have exclusive jurisdiction over "claims related either to the waste repository the statute prescribes or the mechanism created by Congress to finance it."  Def.'s Br. at 8.  However, the language of section 10139(a)(1) on which the United States relies is not so broad:  it grants courts of appeals jurisdiction "for review of any final decision or action" that is made "under this part," which consists of sections 10131 to 10145.  Thus, that provision establishes three prerequisites for circuit court jurisdiction.  First, a party must be seeking review of an agency action.  Second, as the District of Columbia Circuit recently emphasized, that agency action must be final.  In re Aiken County, 645 F.3d 428, 437 (D.C. Cir. 2011).   Third, the final agency action must be made under the part referenced in section 10139.  None of these prerequisites is met here.

First, the State's claim is *not* a petition for review of an agency action.  Instead, the State protectively sought a declaratory judgment that the United States was responsible for the costs of permanently disposing of the Waste Valley nuclear waste under 42 U.S.C. § 10107(b)(2), which

provides that "[t]he costs resulting from permanent disposal of high-level radioactive waste from atomic energy defense activities shall be paid by the Federal Government."  Indeed, the State could not possibly have sought review of an agency action because, as the State showed in its opening brief  (Pl.'s Br. at 16), there has been *no* agency action here.  An agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  The Department of Energy has not taken any such agency action under section 10107(b)(2), nor does that section require any action to be taken.  Instead, the Department of Energy and the State exchanged their views about who was responsible for the costs of permanent disposal of the West Valley nuclear waste.  As a result of that exchange, the State decided, when it filed a lawsuit about responsibility for the costs of cleaning up and maintaining the West Valley site, that it would also seek a declaratory judgment about responsibility for the cost of permanently disposing of the high-level nuclear waste stored at the site.

Second, even if the State were seeking review of a rule, order, license, or some other agency action -- which it is not -- the State has shown in its opening brief (Pl.'s Br. at 14-17) that there has been no *final* agency action here, and the United States has not disputed the absence of finality.  Moreover, the absence of final agency action here is illuminated by the principal case relied upon by the United States, General Electric Uranium Management Corp. v. U.S. Department of Energy, 764 F.2d 896 (D.C. Cir. 1985).  In that case, there was clearly final agency action because the petitioner challenged a final rule establishing a one-time contractual fee for civilian nuclear power reactors.

Third, even if the State were challenging a final agency action, that purported action would not be within the scope of section 10139(a), which provides for circuit court jurisdiction

over final actions under sections 10131 to 10145.  Those provisions concern siting of a

permanent disposal repository, which is not at issue here.  Section 10145 makes it clear that the

jurisdictional scope of section 10139 is limited to siting controversies, because it provides that

"[s]ection 10139 . . . shall cease to have effect" once a permanent repository "is licensed to

receive and possess high-level radioactive waste and spent nuclear fuel."  Indeed, had the

Department of Energy begun disposal by 1998 as Congress intended (see Nat'l Ass'n of

Regulatory Util. Comm'rs v. Dep't of Energy, 680 F.3d 819, 821(D.C. Cir. 2012)), section

10139 would have long been a nullity.

     While the rule at issue in General Electric Uranium Management Corp. did not concern

repository siting, the court held that it was covered by section 10139(a) for reasons that

distinguish it from the State's claim.  That rule was issued pursuant to the Department of

Energy's authority under 42 U.S.C. § 10222 to enter into contracts to fund disposal of high-level

radioactive waste from spent nuclear fuel used by civilian nuclear power reactors to generate

electricity.  Although section 10222 is not within the plain scope of section 10139, which is

limited to sections 10131 to 10145, the District of Columbia Circuit found that the rule was

intended to meet the goal of section 10131(b)(4), which requires the Department of Energy to

establish a Nuclear Waste Fund.  See General Electric Uranium Management Corp., 764 F.2d at

898.

     Here, in contrast, the State seeks a declaratory judgment that because the West Valley

high-level waste is not of civilian origin, the federal government is responsible for its disposal

costs under section 10107(b)(2).   Unlike section 10222, which provides for contracts between

the Department and utilities generating civilian nuclear waste, section 10107(b)(2) has no such

contractual provisions:  if the waste is from federal defense activities, the federal government is responsible for disposal costs.

Moreover, in determining that it had jurisdiction, the circuit court in <u>General Electric Uranium Management Corp</u>. also emphasized that there had been public notice, written comments, and a hearing prior to adoption of the final rule by the Department of Energy.  <u>Id</u>. at 903.  As a result, the court explained, "there [was] no need for an evidentiary hearing" in a district court, "[s]ince there are no factual findings to be made," and it could decide the merits of the petition for review based on "th[e] administrative record, without input from the district court." <u>Id</u>.

Here, there is a need for district court input on the merits of the State's claim.  As the State explained in its opening brief (Pl.'s Br. at 5-6), the State and the United States have disagreed about responsibility for the costs of permanent disposal of the West Valley nuclear waste because they disagree about whether that waste is from federal defense activities.  In contrast to the final rule at issue in <u>General Electric Uranium Management Corp.</u>, here there has been no final agency decision on disposal cost responsibility and thus no administrative record on which a circuit court could rely to review the factual basis for that decision.  As a result, a decision on the merits of the State's claim would require fact-finding by a district court regarding whether the West Valley waste is from defense activities.  Consequently, jurisdiction is not properly in the courts of appeals, and indeed is foreclosed by the language of 42 U.S.C. § 10139(a)(1).

## <u>CONCLUSION</u>

As shown above and in the State's prior submissions, the State's declaratory judgment claim on the question of responsibility for the costs of permanent disposal of the West Valley waste is not ripe for adjudication, and there has been no final agency action by the federal government on that question.   Because it is clear that ripeness and finality are absent -- and the United States has not taken a position disputing those issues -- the Court should dismiss the State's claim on those grounds and deny the United States' motion to dismiss as moot.

DATED:  Buffalo, New York
          September 9, 2013

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Plaintiffs

By: */s/ Timothy Hoffman*
Timothy Hoffman
Assistant Attorney General
Environmental Protection Bureau
350 Main Street, Suite 300A
Buffalo, New York 14202
(716) 853-8400
timothy.hoffman@ag.ny.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK, et al.,


                    Plaintiffs,
         vs.                                        No. 06-CV-810

UNITED STATES OF AMERICA, et al.,

                    Defendants.
_____

CERTIFICATE OF SERVICE

        I hereby certify that on September 9, 2013, I electronically filed the foregoing
Memorandum of Law with the Clerk of the District Court using its CM/ECF system.

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the
                              State of New York
                              Attorney for Plaintiffs

            BY:               S/ Timothy Hoffman_____
                              TIMOTHY HOFFMAN
                              Assistant Attorney General
                              of Counsel
                              350 Main Street, Suite 300A
                              Buffalo, New York 14202
                              (716) 853-8465
                              Timothy.Hoffman@ag.ny.gov

14